# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICK MUNOZ,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, JANINA MEISSNER-FRISK, D.O.,**<br><br>    **Defendants.** | **1:16-CV-01103-LJO-MJS**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br><br>**(ECF No. 58)** |

## I. INTRODUCTION

Plaintiff Rick Munoz ("Plaintiff") brings this suit after his medical approval to sleep in a lower bunk while incarcerated ("chrono") was rescinded. *See generally* ECF No. 77. Plaintiff contends that the very next day after the rescission, he was injured when climbing to his upper bunk. ECF No. 77 at ¶¶ 47-72, 111-147. Plaintiff filed two claims against the medical doctor who withdrew the approval: a denial of medical care claim under 42 U.S.C. § 1983 ("§ 1983") and a negligence claim under state law. Plaintiff also alleged disability claims against both the California Department of Corrections and Rehabilitation ("CDCR") and the doctor (collectively, "Defendants"). Before the Court is Defendants' motion for summary judgment. ECF No. 58. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS the motion in relation to Plaintiff's federal claims. The Court declines to exercise jurisdiction over the state law claim and DISMISSES it.

## II. BACKGROUND

Plaintiff's incarceration relevant to this suit spanned from 2009 until 2016, when he was paroled. ECF Nos. 7 at ¶ 22, 58-1 at 1, 4; 58-4 at DX K. Prior to this period of incarceration, according to Plaintiff's self-reported medical history and record evidence, he had surgeries for various knee problems in 2000, 2008, and 2009.[1] ECF Nos. 58-3 at DX I 7, 61-2 at ¶ 2. In August of 2013, Plaintiff received his first medically-approved chrono assigning him to a lower bunk. ECF No. 58-3 at DX I 168-169. The chrono was issued on a temporary basis of six months and was renewed three additional times, with the last renewal occurring in January 2015. ECF No. 58-4 at DX I 200-201, 235, 238, 267-68. On July 31, 2015, Plaintiff's chrono was revoked by Janina Meissner-Frisk, D.O. ("Frisk"), a health care provider at Plaintiff's prison. *Id*. at DX I 296. Defendant Frisk took the action after CDCR requested that lower bunk chronos issued to inmates not on the *Armstrong* Disability Placement Plan[2,3] ("DPP") be reviewed to ensure their compliance with established medical criteria. ECF Nos. 7 at ¶ 28; 58-3 at EX E; 58-6 at ¶ 8. The next day after Plaintiff's chrono was rescinded, August 1, 2015, Plaintiff reported to the prison's medical staff that his knee had locked up while climbing to his upper bunk, resulting in Plaintiff falling and injuring his right knee. ECF No. 58-4 at DX I 297-302.

---

[1] The timeframe of Plaintiff's right knee surgery is inconsistent throughout the record. No records from the surgery itself are in the record evidence, and references to the surgery in Plaintiff's subsequent medical records are all self-reported by Plaintiff. The Court finds it reasonable to infer that the surgery did not occur in 2008 or 2009 for the simple reason that Plaintiff's left knee surgery records from those years are in the record evidence. While Plaintiff submits an affidavit stating his knee surgery occurred in 2005, ECF No. 61-2 at PX1 ¶ 2, nothing substantiates that time, including Plaintiff's prison medical records from his incarceration around that time. ECF No. 58-3 at DX I 1-35, 37-38. However, on November 8, 2001, a different prison medical record shows that Plaintiff reported to a physician that he had right knee surgery in October 2000, due to "messed up" cartilage. ECF No. 58-3 at DX I 7. The Court adopts the 2000 date, as it seems more probable, given the proximity between the surgery and reporting dates and given that Plaintiff's memory was fresher then. In any event, whether the surgery occurred in 2000 or 2005 is not material to the Court's analysis.

[2] The *Armstrong* Remedial Plan is a remedial order issued in relation to a still-pending prisoner class action, *Armstrong v. Brown*, No. 4:94-cv-02307-CW (N.D. Cal.), filed in 1994, in which plaintiffs seek CDCR compliance with the Americans with Disabilities Act and Rehabilitation Act. The order requires CDCR to implement its Disability Placement Plan, which encompasses the plans, policies, and procedures intended to ensure nondiscrimination against inmates with disabilities.

[3] Plaintiff objects to Defendants' references to the *Armstrong* case on grounds that references constitute hearsay and are irrelevant. In fact, Plaintiff objects to many things, including repeated insistence that his own medical records are hearsay and irrelevant when referenced by Defendants (though not so when referenced by him). *See* ECF No. 61-1. While the Court will not go so far as to state that Plaintiff's objections are made in bad faith, the Court does state that Plaintiff's objections are, for the most part, baseless and non-sensical. Suffice it to say, Plaintiff's objections are overruled to the extent the Court includes any disputed facts or information properly the subject of judicial notice. The Court also directs Plaintiff's attention to Fed. R. Evid. 803, with which he should be acquainted.

Plaintiff's medical records from the incident reflect no visible bruising, redness, or swelling; however, Plaintiff reported significant pain. ECF No. 58-4 at DX I 301. Plaintiff's X-rays also were "completely normal." *Id*. at DX I 308. Plaintiff was issued a temporary lower bunk chrono for seven days, given crutches and instructions for following up with medical staff. *Id*. at DX I 300, 302. On August 19, 2015, during one of his follow up visits, Plaintiff met with Defendant Frisk. *Id*. at DXI 308. At this appointment, authorization for an MRI was requested, a knee brace was ordered for Plaintiff, and he was given a treatment plan that included, among other things, anti-inflammatory medication and the reinstatement of his lower bunk chrono. *Id*. at DX I 308-312. The MRI of Plaintiff's right knee was completed on September 28, 2015. ECF No. 61-2 at PX2 48.

On October 5, 2015, the results of Plaintiff's MRI were reviewed with him. ECF No. 58-4 at DX I 315. The report prepared after Plaintiff's MRI, presumably completed by a radiologist, indicated an ACL tear, and medial and lateral menisci tears to Plaintiff's right knee. ECF No. 61-2 at PX2 48. Plaintiff was referred to an orthopedic surgeon, who saw Plaintiff on December 22, 2015. ECF Nos. 58-4 at DX I 315-317, 342; 61-2 at PX2 53-55. That specialist contradicted the radiologist's findings, asserting that there was no ACL tear and only a medial meniscus tear that was likely the result of Plaintiff's previous surgery. ECF Nos. 58-4 at DX I 342; 61-2 at PX2 53-55. Plaintiff was advised to use a knee brace, take anti-inflammatories, and to follow up in six-months' time. ECF Nos. 61-2 at PX2 55; 58-4 at DX I 346. Plaintiff contends that the orthopedic surgeon reviewed the wrong MRI, reading a later-taken MRI of Plaintiff's left knee, dated November 23, 2015, rather than his right knee MRI. ECF Nos. 7 at ¶¶ 46-47; 61-2 at PX2 49. Plaintiff was paroled in May 2016, before he could be seen for a six-month follow up examination with the orthopedic surgeon. ECF Nos. 58-4 at DX K 28-30; 61-2 at PX2 5.

Sometime after being released, Plaintiff began working as an electrician. ECF No. 58-4 at DX M. While at a job site on January 6, 2017, he sprained his right knee. *Id*. at DX M 2. Medical records from Plaintiff's consultations indicate he reported no previous relevant injury to his right knee stemming

3

from his alleged upper bunk fall. *Id.* at DX M 31, 35. They also indicate a suspected partial ACL tear and sprain characterized as work-related from the January 2017 incident. *Id.* at DX M 31, 51-53. The orthopedist recommended a course of physical therapy. *Id.* at DX M 53.

Plaintiff brings a § 1983 denial of medical care claim against Frisk, as well as a negligence claim against her under California law, for both the rescission of the chrono and his medical treatment after his alleged upper bunk fall. ECF No. 7. Plaintiff also brings a claim against both CDCR and Frisk, alleging violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). *Id.* Defendants move for summary judgment on all claims. ECF No. 58. Plaintiff opposes. ECF No. 61.

Additional details and facts will be supplied as needed.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50.

A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

4

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

## IV. ANALYSIS

As litigants have previously been advised, due to the Court's extraordinary caseload, the Court will not discuss exhaustively every aspect of the motion. With few exceptions, only the arguments raised by the parties are addressed, and the Court's analysis and explanations are limited to those issues and facts necessary for decision.

A. **The § 1983 Denial of Medical Care Claim**

Defendant Frisk contends that summary judgment should be granted to her because she was not deliberately indifferent to Plaintiff's medical needs as a matter of law. ECF No. 58 at 6-7. As a result, Plaintiff cannot demonstrate, and has not demonstrated, that the course of knee treatment and chrono rescission were medically unacceptable under the circumstances or that Defendant chose the course of treatment and chrono rescission in conscious disregard of an excessive risk to Plaintiff's health. *Id*.

Plaintiff opposes, arguing that three things demonstrate Defendant's indifference under the law: her disregard for the medical opinion of doctors who had previously issued chronos to Plaintiff, her failure to conduct an examination of Plaintiff's knees prior to rescinding the chrono, and her denial of "corrective surgery or any rehabilitation to repair Plaintiff's knee." ECF No. 61 at 4-8.

**1. Law**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C.

5

§ 1983). The section " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). It requires that there be an actual connection or link between the actions of a defendant and the constitutional deprivations alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if [s]he does an affirmative act, participates in another's affirmative acts or omits to perform an act which [s]he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish a violation, "a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). If delay or failure to treat a prisoner's serious medical need results in "unnecessary and wanton infliction of pain," the objective standard is met. *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The objective standard also is met when "failure to treat a prisoner's condition could result in further significant injury." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "[i]ndifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.' " *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir.1991), *overruled on other grounds by WMX Techs.,* 104 F.3d 1133. A prison official is deliberately indifferent "only if the [prison official] knows of and disregards an

excessive risk to inmate health and safety." *Gibson v. Cty. of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Put in other words, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotations omitted) (citing *Snow,* 681 F.3d at 988), *overruled in part on other grounds by Peralta v. Dillard,* 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc)). "[M]ere malpractice, or even gross negligence, does not suffice." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Farmer*, 511 U.S. at 835-36 & n.4.

**2. Deliberate Indifference under the Denial of Medical Care Claims**

**a. The Alleged Knee Injury**

Based on the framing of Defendant's motion, the question before the Court is whether Defendant Frisk knew of an excessive risk to Plaintiff's health and disregarded that risk in the way she treated his alleged knee injury. For reasons discussed below, the Court does not find evidence that Defendant was deliberately indifferent in her care of Plaintiff's knee after he sustained his alleged injury following the rescission of his chrono.

The record demonstrates that after Plaintiff reported his injury and was seen by Defendant for diagnostics and treatment, Defendant ordered a knee brace for Plaintiff, issued him a prescription, requested an MRI for Plaintiff, and reinstated Plaintiff's chrono. ECF No. 58-4 at DX I 308-312. This is in addition to the temporary, short-term chrono issued by other medical staff when Plaintiff first reported his injury; the crutches he was given; and X-rays that were taken. *Id*. at DX I 300, 302. Plaintiff's MRI was conducted on September 28, 2015. ECF No. 61-2 at PX2 48. After reviewing Plaintiff's MRI report

7

and meeting with Plaintiff again, Defendant referred Plaintiff to a specialist, who Plaintiff saw on December 22, 2015. ECF No. 58-4 at DX I 315-317, 342; 61-2 at PX2 53-55. That specialist diagnosed Plaintiff as having mild degenerative joint disease in his right knee, with the possible recurrence of a small medial meniscus tear. ECF No. 61-2 at PX2 54-55. That same specialist recommended a course of treatment that included a knee brace and anti-inflammatory medication, both of which were already part of Defendant's treatment plan for Plaintiff. *Id*.

The deliberate indifference standard applicable here has been equated to the subjective recklessness required for a finding of guilt under certain criminal offenses. *Farmer*, 511 U.S. at 837-41. The treatment and care Plaintiff received, summarized above, demonstrates the antithesis of subjective recklessness. There is no evidence, during the time period that Defendant saw Plaintiff for his purported knee injury, that she knew of and disregarded an excessive or substantial risk of harm to Plaintiff's health or safety. Instead, Defendant provided care and took measures to prevent further injury to Plaintiff. Nevertheless, the Court addresses Plaintiff's specific claims of omission.

### (1) The Right and Left Knee MRIs

Plaintiff's complaint specifically argues that Defendant denied corrective surgery or any rehabilitation to Plaintiff, putting him at further risk of serious harm. ECF No. 7 at ¶ 43. But before addressing those allegations, the Court examines, as a predicate matter, Plaintiff's assertion that Defendant is directly responsible for the orthopedic surgeon's allegedly erroneous diagnosis, an argument he raises for the first time in his opposition. ECF No. 61 at 6-7. According to Plaintiff, Defendant provided the orthopedic surgeon with a copy of Plaintiff's left knee MRI, rather than his right. *Id*. Thus, Plaintiff argues, Defendant's machinations led to the specialist's allegedly incorrect diagnosis and treatment plan, an outcome Defendant desired in order to protect herself from Plaintiff's lawsuit. *Id*.

The record does not contain conclusive proof whether or not the orthopedic surgeon reviewed an incorrect MRI. Certainly, the specialist's report references the date of Plaintiff's left knee MRI rather

than his right. ECF No. 61-2 at PX2 54. This may be a simple clerical error, if, for example, the specialist reviewed both MRIs or saw reference to both in Plaintiff's medical record. Additionally, further issues are left unexplained and unargued, such as how a medical expert might confuse images of a left knee for images of a right knee, which would be, of course, reversed images. Regardless, on summary judgment, the Court draws all reasonable inferences in favor of the non-moving party. Assuming without deciding that it is reasonable to infer that Plaintiff's orthopedic specialist confused a left knee MRI with a right knee MRI, an issue not addressed by Plaintiff's medical expert in any manner, ECF No. 61-2 at PX5, there is simply no evidence in the record that Defendant was responsible for the allegedly switched MRIs, either negligently or under the much higher subjective recklessness standard necessary to render her actions deliberately indifferent.

### (2) Rehabilitation

Plaintiff contends that Defendant also was deliberately indifferent when she denied Plaintiff any rehabilitation. ECF No. 7 at ¶¶ 43, 80. As noted above, Defendant's treatment plan for Plaintiff comported with the consulting orthopedic surgeon's recommendations, and again, there is no evidence that Defendant sabotaged Plaintiff's appointment by switching his MRIs. Plaintiff has not specified what "rehabilitation," exactly, he was denied and should have received. While his complaint alleges that "[p]hysical therapy was never provided to Plaintiff," there are references in his prison medical records to "home exercises" and "home P.T." in relation to both his right and left knees. ECF No. 58-4 at DX I 311, 325, 327, 336, 340. Even if the Court assumes *arguendo* that Plaintiff should have received some course of physical therapy or other rehabilitation that he was not given, Plaintiff has not demonstrated that the omission of that hypothetical treatment rises to the level of a constitutional violation, rather than something lesser, such as disagreement on treatment among experts or simple negligence.

### (3) Surgery

As noted, Plaintiff's medical records indicate that Defendant Frisk relied on an orthopedic surgeon's opinion in concluding that Plaintiff did not have an ACL tear and that surgery was not

medically indicated, a conclusion supported by Defendant's affidavit. ECF Nos. 58-4 at DX I 317, 341, 346; 58-6 at ¶¶ 17, 19. Even if the Court accepts that Plaintiff had an ACL tear that was misdiagnosed by the orthopedic surgeon, Plaintiff himself agrees, as does his expert, that surgery is not always necessary to repair a tear. ECF Nos. 7 at ¶ 9, 61-2 at PX5. Plaintiff has not provided evidence that Defendant Frisk was subjectively reckless under the law when she conformed her treatment plan with that of the consulting orthopedic surgeon.

Nothing in Plaintiff's medical expert's opinion contradicts the conclusion that Defendant was not deliberately indifferent. ECF No. 61-2 at PX5. Plaintiff's expert states that "arthroscopy should be considered" when a patient's symptoms persist in the face of a negative MRI, but the expert does not suggest when or how soon arthroscopy should be considered. *Id*. Furthermore, the expert's opinion does not state "arthroscopy *must be performed*," only that it "should be considered." *Id*. This information is significant in light of the orthopedic surgeon's recommendation that Plaintiff have a follow up appointment six months after the initial consultation.

As with Plaintiff's argument regarding rehabilitation, there is no dispute as to material facts that precludes summary judgment. Plaintiff has not demonstrated that the course of treatment Defendant Frisk chose was medically unacceptable under the circumstances and that she chose this course in conscious disregard of an excessive risk to Plaintiff's health. For the above reasons, summary judgment is granted to Defendant Frisk to the extent Plaintiff's claim of medical indifference relates to her treatment of Plaintiff's alleged knee injury.

    **b.**  **The Chrono Rescission**

Regarding the rescission of Plaintiff's lower bunk chrono, Plaintiff contends that Defendant's deliberate indifference is evinced by her failure to examine his knees prior to rescinding his chrono, arguing that she knew the "substantial risk of serious harm of assigning Plaintiff an upper bunk because Plaintiff's disability was properly documented in prison records" and because "other physicians had already made that determination [of the risk] by issuing a series of low bunk chronos." ECF No. 7 at

¶¶ 75, 77. Plaintiff further argues that Plaintiff's "state of mind … was that she did not care whether Plaintiff had a disability … and did not care if rescinding the chrono would threaten Plaintiff with injury." *Id*. at ¶ 77.

Plaintiff's argument conflates factual issues and legal questions in reaching conclusions not supported by the record. First, Plaintiff has not established that he had a "documented" disability, but even assuming for the purposes of summary judgment that he did, the "substantial risk of serious harm" from being assigned an upper bunk is not evident from the record. Second, and relatedly, the decision by other physicians to issue chronos to Plaintiff on a temporary basis is not equivalent to those physicians' determination of "substantial risk" to Plaintiff. Third, no record evidence supports a finding of Defendant's alleged culpable "state of mind." Accordingly, lacking record evidence to create a material dispute of facts, even with all inferences drawn in Plaintiff's favor, the Court concludes that Defendant was not deliberately indifferent as a matter of law.

Here, the parties do not dispute that Defendant did not examine Plaintiff's knees before rescinding his chrono but instead reviewed Plaintiff's medical records and twice observed Plaintiff during appointments for other ailments. ECF Nos. 61 at 4-5, 63 at 8. An individual decision or an institutional policy not to examine an inmate's knees immediately prior to considering the rescission of a chrono related to an alleged knee condition may support an argument for negligence, though the Court declines to decide the issue. The alleged failure, however, does not support a finding that this particular Defendant knew of and disregarded an excessive risk to this Plaintiff's health and safety when she used Plaintiff's medical records and her remembrances of recent encounters with him to determine whether a lower bunk chrono was medically indicated.

Even if the Court infers from Plaintiff's medical expert's report that, in the expert's opinion, Defendant should have interviewed and physically examined Plaintiff immediately prior to reviewing Plaintiff's chrono, ECF No. 61-2 at PX5, Plaintiff has not established a clear linkage between that failure, his ultimate injury, and a constitutional deprivation, as required by a claim under § 1983. That is,

11

Plaintiff has not established that failing to interview him and physically examine him, and instead relying on medical records and recent examinations, constituted a subjective recklessness towards an excessive risk that was the actual causation of Plaintiff's injury. After all, what if Defendant had examined Plaintiff but still arrived at the same conclusion to rescind the lower bunk chrono? Would that, too, amount to a constitutional violation according to Plaintiff? If so, the alleged constitutional violation here is the rescission of the chrono itself, whether or not a prisoner has been examined; if not, the alleged constitutional violation here is the failure to perform an in-person, physical examination immediately prior to removing a prison medical accommodation. The Court can find no legal authority supporting either proposition amounting to a constitutional violation, and Plaintiff has presented none.

Further, assuming *arguendo* that Plaintiff's medical records established a disability related to one or both knees, there is no evidence of the particularized risk that arose from the disability given that 1) Plaintiff was assigned an upper bunk from 2009 to 2013 without incident, and 2) the chief relevant complaint reflected in his medical records up to May 16, 2013 is pain. ECF No. 58-3 at DX I 50, 51, 53, 59, 65, 72 (2010)[4]; 88, 89 (2011); 123 (2012); 147 (2013). The first physician who ultimately issued a temporary lower bunk chrono to Plaintiff initially denied it twice, on May 24, 2013 and on July 16, 2013. *Id*. at DX I 149, 157. On May 24, 2016, the physician noted that a lower bunk chrono was "not indicated per CDCR criteria" and that Plaintiff's X-rays were negative. *Id*. at DX I 149. On July 16, 2013, the physician again wrote that Plaintiff was not eligible for a lower bunk "per CDCR criteria." *Id*. at DX I 157. On August 15, 2013, the physician noted that his request for an MRI of Plaintiff's knee was denied, and the physician then issued a temporary lower bunk chrono for six months. *Id*. at DX I 168. The same physician renewed the chrono on a temporary basis on February 21, 2014, writing that

---

[4] Some of these requests are duplicates in that they are Plaintiff's inquiries into a cancelled appointment or appointments not yet scheduled based on a previous request.

Plaintiff was "still [complaining of] pain" when climbing to an upper bunk but "especially" when jumping down. *Id.* at DX I 200

Three of Plaintiff's four medically-approved chronos from 2013-2015 were issued on a temporary basis of six months each, rather than a permanent basis.[5] ECF No. 61-2 at PX2 21-24, 29-30. The last chrono issued before Defendant Frisk's review was marked permanent; however, the physician issuing the chrono wrote on Plaintiff's medical chart that his "L knee sprain" was "improved." *Id.* at PX2 34-35. None of this supports the conclusion that assignment to an upper bunk presented an excessive risk to Plaintiff's health and safety in light of his alleged disability. Indeed, despite Plaintiff's suggestion otherwise, no physician issuing a chrono during the period in question indicated that the chrono was intended to abate a health or safety risk, and no physician ever placed Plaintiff on the prison's disability placement list. *Id.* at PX2 21-24, 29-30, 34-35. Ultimately, the "difference of opinion between a physician and [a] prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987.

Finally, the only evidence Plaintiff offers to support his assertion regarding Defendant's state of mind are his bald assertions. ECF No. 7 at ¶¶ 74, 77. That is, quite simply, not evidence to conclude that Defendant knew of and disregarded a substantial risk to Plaintiff's health and safety in reassigning him to an upper bunk.

For all of the reasons above, the Court grants summary judgment to Defendant as it relates to rescission of Plaintiff's chrono.

B. **The ADA and RA Claims**

Defendants CDCR and Frisk move for summary judgment on Plaintiff's ADA and RA claims on several grounds, including that Plaintiff has failed to establish that he was a qualified individual under

---

[5] For the third chrono, issued on July 29, 2014, the nurse practitioner issuing it indicated clearly on Plaintiff's chart that the chrono was being renewed for "another 6 mos." ECF No. 61-2 at PX2 29. On the chrono form itself, the nurse practitioner listed a six-month expiry date, but ticked "P" for permanent. *Id.* at PX2 30.

the ADA at the time his chrono was rescinded. ECF No. 58-1 at 10-11. Plaintiff, however, counters that his past surgeries and previous lower bunk chronos were sufficient to establish he was disabled within the meaning of the ADA and RA. ECF No. 61 at 8. He also asserts that issuance of his previous chronos constituted notice to CDCR and Frisk of his need for accommodation, and thus, their deliberate indifference is demonstrated by the rescission of that accommodation, i.e. Plaintiff's chrono. *Id*. at 8-9.

1. **Law**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. "Title II emphasizes 'program access,' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014).

"To bring a successful ADA discrimination claim, a plaintiff must first prove that he is disabled as defined by the ADA." *Higley v. Rick's Floor Covering, Inc.*, 400 F. App'x 244, 245 (9th Cir. 2010). Disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). In determining whether a person is substantially limited in a major life activity, "it may be useful … to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(ii). Importantly, not all impairments are considered disabilities under the ADA. *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1069 (9th Cir. 2005).

For a plaintiff to prevail on a Title II claim, the plaintiff must prove: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff either was excluded from participation in or denied

the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of the plaintiff's disability. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). "The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (internal citation and quotations omitted). "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

Proof of intentional discrimination is not required to prevail on an ADA violation claim. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004). Under certain circumstances, nominal damages may be awarded in the absence of intentional discrimination. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874-75 (9th Cir. 2017) (holding that ADA lawsuit brought by former employee against employer was not moot because he could be awarded nominal damages under 42 U.S.C. § 12203). But to recover monetary damages under Title II of the ADA or the RA, a plaintiff must prove intentional discrimination on the part of the defendant. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) ("'[C]ompensatory damages are not available under Title II [of the ADA] or § 504 [of the RA] absent a showing of discriminatory intent.'"). The Ninth Circuit has adopted the deliberate indifference standard in proving intentional discrimination under the ADA and the RA. *Duvall*, 260 F.3d at 1138. That is, the plaintiff must prove "both knowledge that harm to a federally protected right was substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

The first element of the deliberate indifference test is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff

notifies the public entity of the need for accommodation, or the need is obvious or required by statute or regulation. *Duvall*, 260 F.3d at 1139. The second element is satisfied by showing that the entity failed to act through "conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1139-40. The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" to the requests of the disabled individual. *Id.*

2. **Analysis**

Even drawing all reasonable inferences in Plaintiff's favor as the non-moving party, the record does not support a finding that Plaintiff was disabled within the meaning of the term as used in the ADA and RA at the time his chrono was rescinded.[6] Plaintiff has not presented evidence on which a trier of fact could base a conclusion that he had a physical impairment that substantially limited one or more of his major life activities when considering the condition, manner, and duration under which he could perform the activities when compared to most people in the general population. Rather, the record evidence establishes that Plaintiff experienced impairment. But not all impairments are disabilities under the ADA. *Wong*, 410 F.3d at 1069.

Plaintiff's complaint states that he is disabled in both knees dating from 2005.[7] ECF No. 7 at ¶ 24. Plaintiff argues that his alleged knee disability substantially limits his ability to stand, walk, and climb. *Id.* at ¶ 94. He points to three previous surgeries as evidence, two of which were in his left knee according to his medical records, and one of which was in his right knee, though there are no medical records from that surgery in the record evidence. ECF No. 61-2 at PX1 ¶ 2; PX2 2-7. The two left knee arthroscopic surgeries occurred in August 2008 and February 2009. *Id.* at PX2 2-7. The Court will

---

[6] The Court will only refer to ADA for the sake of simplicity.
[7] There are several fact discrepancies between what is alleged in Plaintiff's complaint and what is contained in the record evidence. To the extent the discrepancies do not involve material facts, the Court does not address them.

16

assume for this motion's purpose that Plaintiff had surgery on his right knee in October 2000.[8] ECF No. 58-3 at DX I 75.

The Court finds no support for the proposition that surgery, even more than one, demonstrates a disability as defined by the ADA. Plaintiff fails to appreciate that he must provide evidence of a substantial limitation on the major life activities of walking, standing, and climbing. Surgery does not, in and of itself, demonstrate a substantial limitation. Neither does intermittent use of knee braces or the mere presence of pain. ECF No. 7 at ¶ 42. The Supreme Court has explained that " '[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' " *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 196 (2002) (internal citation omitted), *overturned on other grounds due to legislative action* (2009). "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way ... from qualifying as disabilities." *Wong*, 410 F.3d at 1064 (internal quotations and citation omitted).

First, Plaintiff provides no record evidence that he was substantially limited in standing. Second, Plaintiff provides limited evidence of limitation on his ability to climb. The heart of Plaintiff's claim is his alleged difficulty in reaching an upper bunk. Nothing in the record supports a finding that Plaintiff had difficulties climbing stairs or anything other than his bunkbed. Having difficulty climbing to an upper bunk qualifies as an impairment, but it does not qualify as a substantial limitation on Plaintiff's major life activity of climbing. Finally, Plaintiff provides record evidence of impairment in the major life activity of walking in that the record demonstrates he complained his knees swelled when he did "a lot of walking," ECF No. 58-3 at DX I 147, and he intermittently used a cane, ECF No. 58-4 at DX I 233. Both of those facts demonstrate some impairment, but they do not demonstrate a substantial limitation on the condition, manner, and duration of Plaintiff's ability to walk as compared to most people in the general population. Most other evidence to which Plaintiff refers, such his general

---

[8] *See* n.1. The date of the surgery is unclear, but whether it occurred in 2000 or 2005 is not material to the Court's analysis.

complaint of knee pain, does not demonstrate a limitation on the activity of walking, at least not in the way that evidence is presented in his complaint and his opposition.

Further supporting the Court's conclusion, nothing in Plaintiff's medical records indicates that any medical doctor ever concluded that Plaintiff was disabled within the meaning of the ADA. *See generally* ECF Nos. 58-3, 58-4 at DX I. This includes when Plaintiff was screened for inclusion on the DPP list at the beginning of his 2009-2016 incarceration. ECF No. 58-4 at DX K 6 ("the current medical assessment [of Plaintiff] by institutional staff doesn't necessitate placement in the Disability Placement Program"). It also includes all of Plaintiff's subsequent contacts with prison doctors, any of whom could have designated Plaintiff for inclusion on the DPP list. While DPP designation is not dispositive as to whether an inmate is disabled within the meaning of the ADA, it is relevant evidence nonetheless.

Plaintiff asserts that "he was identified as disabled when low-bunk chronos were issued and re-issued." ECF No. 61 at 8. Plaintiff further avers that "Low-bunk chronos are only issued for persons with disabilities. [ ] Plaintiff was disabled." ECF No. 61 at 8. In essence, Plaintiff's circular argument is that chronos are only issued to inmates with disabilities; therefore, Plaintiff is disabled because he was issued chronos.

As evidence of his argument, Plaintiff points to Defendant Frisk, in her deposition, agreeing that lower bunk chronos are issued for people who have a disability. ECF No. 61-2 at PX3 12:25-13:1. And, to be sure, when Plaintiff asked Defendant Frisk if lower bunk chronos are "ever issued for somebody without a disability," Defendant Frisk responded "no." *Id*. at PX3 12:16-18. However, neither the question nor the answer references the ADA, or more specifically, the definition of "disability" within the context of the ADA. Further, when first asked why lower bunk chronos are issued, Defendant Frisk responded, "Due to physical limitations." *Id*. at PX3 10:1-2.

The issuance of a chrono simply does not suffice to prove disability within the meaning of the ADA. "Disability," as the term is used in common parlance, and "disability" as defined in the ADA are two different creatures. Here, Plaintiff can demonstrate some impairment related to climbing and

walking, but even coupling the evidence of impairment with the issuance of Plaintiff's chronos does not give rise to evidence of substantial limitations on the activities of climbing and walking as compared to most people in the general population. Plaintiff was not disabled within the meaning of the ADA at the time his chrono was rescinded, and for that reason, summary judgment is GRANTED to Defendants.

C. **Qualified Immunity**

The Court declines to address Defendants' argument that they are entitled to qualified immunity as a matter of law, ECF No. 58-1 at 13-15, because summary judgment on Plaintiff's two federal claims is granted in Defendants' favor on other grounds.

D. **The Negligence Claim**

Having granted summary judgment to Defendants on both federal claims in Plaintiff's complaint, the sole remaining claim for negligence, presents a question of state law. The Court examines briefly whether it is appropriate to exercise jurisdiction over that remaining claim.

Courts are guided by the principle that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988). The factors a court considers are judicial economy, convenience, fairness, and comity. *Id*.

Here, the Court declines to exercise jurisdiction over an action with no remaining federal claims. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). This action does not present an unusual case such that exercise of jurisdiction is warranted. *Carnegie–Mellon Univ,* 484 U.S. at 350 n.7. Accordingly, Plaintiff's remaining claim is DISMISSED.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS that:

1) Summary judgment is GRANTED to Defendant Frisk on Plaintiff's claim for medical indifference under the Eighth Amendment;

2) Summary judgment is GRANTED to Defendants Frisk and CDCR on Plaintiff's claim for

violations of the ADA and RA; and

3) The Court declines to exercise jurisdiction over the remaining state law claim for negligence and DISMISSES it.

4) The Clerk of Court is directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated: **October 9, 2019**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE